IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EXCENTUS CORPORATION**, | ) | CIVIL ACTION NO. 13-178 |
| Plaintiff, | ) | |
| v. | ) | |
| **GIANT EAGLE, INC., DAVID SHAPIRA, DANIEL SHAPIRA,** | ) | |
| Defendants. | ) | |

## OPINION

CONTI, Chief District Judge

### I. Introduction

On November 26, 2013, the court denied the Motion for Leave to File Answer to Plaintiff's Amended Complaint and Amended Counterclaims (the "motion for leave to amend") (ECF No. 106) filed by defendant and counterclaim plaintiff Giant Eagle, Inc. ("Giant Eagle"). (ECF Nos. 125, 126.) In the motion for leave to amend, Giant Eagle sought leave of court to add a declaratory judgment action to its counterclaims seeking a declaration that, pursuant to stock purchase agreements entered into between Giant Eagle and plaintiff Excentus Corporation ("Excentus"), Excentus is required to obtain Giant Eagle's consent prior to exercising its option under a stock repurchase agreement between Excentus and Alliance Data Systems, Inc. ("ADS"). At a hearing on November 25, 2013, the court determined that permitting Giant Eagle leave to amend would be futile because this court was not the proper forum for Giant Eagle's declaratory judgment action pursuant to the forum selection clause contained in the stock purchase

agreements. On November 26, 2013, the court issued an opinion and order denying Giant Eagle's motion for leave to amend. (ECF Nos. 125, 126.)

On December 2, 2013, Giant Eagle filed a motion for reconsideration of the court's decision denying its motion for leave to amend and a brief in support of the motion. (ECF Nos. 129, 130.) On December 3, 2013, Excentus filed a response in opposition to Giant Eagle's motion for reconsideration, and a brief in support of the response. (ECF Nos. 131, 132.) On December 12, 2013, the court issued a memorandum opinion and order granting Giant Eagle's motion for reconsideration. The court reasoned that its decision denying Giant Eagle's motion for leave to amend required reconsideration to "correct a clear error of law" in light of the Supreme Court's decision in Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas, 134 S.Ct. 568 (2013); Waye v. First Citizen's Nat'l Bank, 846 F.Supp. 310, 313–14 (M.D. Pa. 1994), aff'd, 31 F.3d 1175 (3d Cir.1994) (motion to reconsider "must rely on at least one of three grounds: 1) an intervening change in controlling law, 2) the availability of new evidence not previously available, or 3) the need to correct a clear error of law or prevent manifest injustice."). In denying Giant Eagle's motion for leave to amend, the court held granting Giant Eagle leave to amend would be futile under Federal Rule of Civil Procedure 12(b)(3) because this court is not the proper forum for Giant Eagle's proposed counterclaim. In the memorandum opinion granting Giant Eagle reconsideration of that decision, the court recognized that under Atlantic Marine, a forum selection clause does not render an otherwise proper venue improper. The Court in Atlantic Marine held:

> Section 1404(a) and Rule 12(b)(3) allow dismissal only when venue is "wrong or improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.

> …
> Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in §1391(b). As a result, a case filed in a district that falls within §1391 may not be dismissed under §1406(a) or Rule 12(b)(3).

Atlantic Marine, 134 S.Ct. at 577. The court in this case reasoned that because there was no dispute that this court is a proper venue for Giant Eagle's proposed counterclaim under 28 U.S.C. § 1391, the court erred under Atlantic Marine when it denied Giant Eagle's motion for leave to amend based upon this court being the "wrong" or "improper" forum for the counterclaim. The court granted Giant Eagle's motion for reconsideration on that basis.

The court noted, however, that Excentus was not without redress to enforce an otherwise valid forum selection clause entered into by the parties. As the Supreme Court held, "a forum-selection clause may be enforced by a motion to transfer under §1404(a)." Atlantic Marine, 134 S.Ct. at 575. Section 1404(a) provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The Supreme Court instructed that "[w]hen a defendant files [a motion to transfer venue to enforce a forum selection clause]…a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Atlantic Marine, 134 S.Ct. at 575.

On January 2, 2014, Excentus filed a motion to sever and transfer Giant Eagle's counterclaims and brief in support of the motion. (ECF Nos. 147, 148.) Excentus' motion to sever and transfer is not limited to the proposed counterclaim in issue in the motion for leave to

amend; Excentus requests the following counterclaims be severed and transferred to the United States District Court of the Northern District of Texas, Dallas Division:

- <u>Counterclaim VI</u>—Breach of Section 8.07 of the stock purchase agreements

- <u>Counterclaim VII</u>—Recovery of Attorney's Fees Under Texas Code

- <u>Counterclaim VIII</u>—Breach of Section 7.01 of the stock purchase agreements

- <u>Counterclaim IX</u>—Breach of Section 5.07 of the stock purchase agreements

- <u>Counterclaim X</u>—Breach of Section 3.09 of the stock purchase agreements; and

- <u>Counterclaim XII</u>—Declaratory Judgment Regarding Excentus' Breach of Section 5.02 of the stock purchase agreements

(ECF No. 145.) The foregoing counterclaims are counterclaims asserted by Giant Eagle that arise from the stock purchase agreements entered into by the parties. (<u>Id.</u>) On January 21, 2014, Giant Eagle filed a response in opposition to Excentus' motion to sever and transfer and a brief in support of the response. (ECF Nos. 161.) On February 21, 2014, Excentus with leave of court filed an unopposed motion for leave to file a reply brief to its motion to sever and transfer and attached the proposed reply brief to the motion. (ECF No. 164.) On February 18, 2014, Giant Eagle with leave of court filed a surreply brief to Excentus' motion to sever and transfer. (ECF No. 172.)

In its motion to sever and transfer, Excentus argues the six counterclaims listed above should be transferred to the United States District Court of the Northern District of Texas, Dallas Division U.S.C. § 1404(a). In the alternative, Excentus argues the court should dismiss those counterclaims for failing to state a claim upon which relief cam be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). According to Excentus, the Court in <u>Atlantic Marine</u> did not address or preclude the possibility that a forum selection clause may be enforced by a party filing a motion to dismiss under Rule 12(b)(6).

In its responsive submissions, Giant Eagle argues: Texas law controls the dispute between the parties and requires the counterclaims in this case to be tried in the Western District of Pennsylvania; 28 U.S.C. §1404(a) does not apply to counterclaims; Federal Rule of Civil Procedure 21 with respect to severance weighs heavily against severance in this case; and the counterclaims in issue cannot be dismissed for failure to state a claim upon which relief can be granted. (ECF No. 161.)

The parties' arguments will be addressed below.

## II.   Discussion

### A.   The Forum Selection Clause

The forum selection clause in the stock purchase agreements provides:

**VENUE FOR ANY ACTION ARISING OUT OF THIS AGREEMENT SHALL RESIDE EXCLUSIVELY IN THE COUNTY IN WHICH THE RESPONDENT'S PRINCIPAL OFFICES ARE LOCATED.**

(ECF No. 28 at 51.) This court previously held that permissive and compulsory counterclaims may be subject to forum selection clauses, and under Jonathan H. v. The Souderton Area School District, 562 F.3d 527, 529-30 (3d Cir. 2009), a decision cited by Giant Eagle, the phrase "any action arising" was broad enough under the common meaning of the word "action" to encompass the filing of a counterclaim. (ECF No. 125 at 5-7.) Giant Eagle does not reargue the first point, i.e., that permissive and compulsory counterclaims may be subject to forum selection clauses; instead, Giant Eagle reargues that "any action arising" means the filing of an entire lawsuit, and not the filing of counterclaims.

At the hearing on November 25, 2013, Giant Eagle argued that under Jonathan H, a decision by the Third Circuit Court of Appeals, "a Defendant or a respondent does not bring an action by asserting a counterclaim;" instead, an "action" means the entirety of a lawsuit. (H.T. 11/25/13 (ECF No. 127) at 13-14.) The court noted, however, that the issue in Jonathan H was the meaning of the phrase "bring an action" under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et

5

seq. (the "IDEA"), rather than the common meaning of "an action." (Id. at 17, 21.) The court in Jonathan H explained:

> The phrase "bring an action" is defined as "to sue; institute legal proceedings." Black's Law Dictionary (8th ed.2004). Therefore, an action is "brought" when a plaintiff files a complaint, which is the first step that invokes the judicial process. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *id.* Advisory Committee Note ("The first step in an action is the filing of the complaint."). Unlike the proactive nature of a complaint, a counterclaim is reactive because it is filed only after the plaintiff has initiated the case by bringing a civil action. Indeed, a counterclaim is a "claim for relief asserted against an opposing party after an original claim has been made." Black's Law Dictionary 353 (8th ed.2004); *see also* 3 James Wm. Moore, et al., Moore's Federal Practice § 13.90(2)(a), at 13–79 (3d ed. 1997) ("Only defending parties may assert counterclaims."). Counterclaims are therefore "generally asserted in the answer" to a previously filed complaint. Moore, supra, § 13.92, at 13–88.

Jonathan H, 562 F.3d at 529. With respect to the common meaning of the word "action," the court of appeals prior to analyzing the statutory language of the IDEA noted:

> The word "action," without more, is arguably broad enough to encompass any type of judicial proceeding, including counterclaims. *See* United States v. P.F. Collier & Son Corp., 208 F.2d 936, 938 (7th Cir.1953) ("If the question were one of first impression, we would have no difficulty in reaching the conclusion that the words 'any action, suit or proceeding' are sufficiently broad in their ordinary and commonly accepted meaning to encompass every form and kind of litigation."); *see also* Black's Law Dictionary 28–29 (7th ed.1999) (defining an "action" as, inter alia, "[a] civil or criminal judicial proceeding"). Cf. U.C.C. § 1–201(1) (" 'Action' in the sense of a judicial proceeding, includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined.").

Id. The court based upon the foregoing, determined that based upon the common meaning of the word "action," the phrase "any action arising" is broad enough to include the filing of a counterclaim.

Giant Eagle in its response to Excentus' motion to sever and transfer argues that under Texas law, which is applicable in this case, "any action arising" means the initiation of the lawsuit. Giant Eagle sets forth three reasons to support this argument. First, Giant Eagle argues that the district court for the Northern District of Texas "already interpreted the forum selection clause…as a

provision intended solely to discourage the *initiation* of a lawsuit." (ECF No. 161 at 4 (citing Excentus Corp. v. Giant Eagle, Inc., Civ. Action No. 11-3331, 2012 WL 2525594 (N.D. Tex. July 2, 2012).) Giant Eagle cites the following passage from the court's decision in support of its argument:

> [T]he Court finds that it is neither unfair nor unreasonable to require the party initiating litigation to sue in the county of the respondent, as agreed to by the parties, which evidences the parties' apparent desire to discourage litigation. *See* Abbott Labs. v. Takeda Pharm. Co., 476 F.3d 421, 422 (7th Cir.2007) ("The purpose of specifying two forums in this way is to discourage either side from instituting litigation, because whoever sues must litigate on the other party's turf.")

Id. at *3. The issue before this court, i.e., the meaning of the phrase "any action arising" was not before the court in the Northern District of Texas; indeed, Excentus in that case did not argue the forum selection clause was unenforceable. Id. ("Excentus does not argue that any of the foregoing factors render the forum clauses unreasonable, focusing instead on its contention that the forum selection clauses are inapplicable to its claims."). Excentus argued the forum selection clause was inapplicable to its claims. Id. Under those circumstances, the foregoing passage addressed an issue different from the issue before the court in this case.

Giant Eagle argues this court—"as a matter of judicial comity"— should follow the court's decision in the Texas case. Giant Eagle cites Hayman Cash Register Co. v. Sarokin, 669 F.2d 162 (3d Cir. 1982), in support of its judicial comity argument. In that decision, the court noted: "'[J]udges of co-ordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other.'" Hayman, 669 F.2d at 168-69 (quoting TCF Film Corp. v. Gourley, 240 F.2d 711, 713 (3d Cir. 1957)). The court held that this rule "should similarly apply to the propriety of transfer orders between two courts" because "[a] disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances." Hayman, 669 F.2d at 169. As noted, the matter before this court was not litigated before the district court in Texas. This court is not, therefore, bound by dictum from the

district court in Texas, which, in any event, does not squarely address whether "any action arising" includes a counterclaim filed by a defendant. In any event, Giant Eagle will not be precluded from raising any valid defense in this case based upon the provisions of the stock purchase agreements. This court will coordinate with the district court in the Northern District of Texas to facilitate a fair and prompt resolution of the disputes in both cases.

Giant Eagle's second reason the court should hold "any action arising" means the initiation of a lawsuit and not a counterclaim is that "Section 11.07 of the Shareholders Agreements provides, in pertinent part, '[v]enue for *any action brought* hereunder shall be proper exclusively in the county in which the respondent's principal offices are located." (ECF No. 161 at 6 (quoting ECF No. 162 at 15-16)) (emphasis in (ECF No. 161).) Exhibit E to the stock purchase agreements is a "Form of Shareholders Agreement." (ECF No. 28 at 55.) Section 2.01 of the stock purchase agreements provides that at

> [t]he closing of the transactions contemplated by this Agreement…the Parties shall deliver or cause to be delivered…a Shareholders Agreement in the form attached hereto as Exhibit E (the **"Shareholders Agreement"** and together with the Registration Rights Agreement, the **"Related Agreements"**) executed by the Company and each Person (as defined below) who owns in excess of 5% of the issued and outstanding Common Stock (as defined below) on a fully-diluted basis as of the Closing Date[.]

(Id. at 28-29) (emphasis in original.) Section 8.12 of the stock purchase agreements provides:

> Entire Agreement. This Agreement together with the Schedules and Exhibits attached hereto, shall constitute the entire agreement between the Parties with respect to the transactions contemplated hereby and shall superseded all prior or contemporaneous negotiations, understandings and agreements with respect thereto. There are no representations, agreements, arrangement, or understandings, oral or written, between or among the Parties relating to the subject matter of this Agreement that are not fully expressed herein.

(Id. at 51.) Section 11.07 of the shareholders agreement, in pertinent part, provides:

> **VENUE FOR ANY ACTION BROUGHT HEREUNDER SHALL BE PROPER EXCLUSIVELY IN THE COUNTY IN WHICH THE RESPONDENT'S PRINCIPAL OFFICES ARE LOCATED**.

(ECF No. 162 at 15.) Giant Eagle argues that under Personal Security & Safety Systems Inc. v. Motorola Inc., 297 F.3d 388, 395 (5th Cir. 2002), this court must consider the meaning of the word "action" in Section 11.07 of the shareholders agreement when deciding the meaning of "any action arising" in the forum selection clause of the stock purchase agreements. (ECF No. 161 at 6.)

In Personal Security, the parties executed three agreements in connection with the defendant making an investment in the plaintiff company: "a Stock Purchase Agreement, a Product Development and License Agreement, and a Shareholders Agreement." Personal Sec., 297 F.3d at 390. The court noted that "[e]ach of these agreements played a particular role in the overall transaction." Id. The Producet Development and License Agreement (the "licensing agreement") contained an arbitration clause; the stock purchase agreement did not. Id. The plaintiff sued the defendant for breach of the stock purchase agreement. In response, the defendant filed a motion to compel arbitration. Id. The plaintiff argued the arbitration provisions of the licensing agreement were not applicable to its claims because its claims arose solely under the stock purchase agreement. Id. The court agreed with the defendant and held: "the licensing agreement's arbitration provision governs claims arising out of the stock purchase agreement because the agreements were executed together as part of the same overall transaction and therefore are properly construed together." Personal Sec., 297 F.3d at 390.

The plaintiff in Personal Security argued that the court's interpretation of the arbitration provision of the licensing agreement was contrary to the the forum selection clause in the stock purchase agreement. The forum selection clause provided:

> Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. ANY SUIT OR PROCEEDING BROUGHT HEREUNDER SHALL BE SUBJECT TO THE EXCLUSIVE JURISDICTION OF THE COURTS LOCATED IN TEXAS.

Personal Sec., 297 F.3d at 395. Plaintiff argued based upon this provision that the parties "expressly excluded the use of arbitration to resolve…any dispute arising out of the Stock Purchase Agreement[, which] must be litigated in Texas courts." Id. The court rejected plaintiff's argument, reasoning:

> Standing alone, one could plausibly read the forum selection clause to mean that Texas courts have the exclusive power to resolve all disputes arising under the Stock Purchase Agreement. But the forum selection clause does not stand alone. To the contrary, we must interpret the forum selection clause in the context of the entire contractual arrangement and we must give effect to all of the terms of that arrangement. See Richland Plantation Co. v. Justiss-Mears Oil Co., Inc., 671 F.2d 154, 156 (5th Cir.1982) ("When several documents represent one agreement, all must be construed together in an attempt to discern the intent of the parties, reconciling apparently conflicting provisions and attempting to give effect to all of them, if possible."). Given our conclusion that the arbitration provision in the Product Development Agreement applies to all claims related to the overall transaction, we must therefore interpret the forum selection provision in the Stock Purchase Agreement in a manner that is consistent with the arbitration provision.
>
> Reading the two provisions together, it becomes clear that the forum selection clause does not require the parties to litigate all claims in Texas courts, nor does it expressly forbid arbitration of claims arising under the Stock Purchase Agreement. Instead, we interpret the forum selection clause to mean that the parties must litigate in Texas courts only those disputes that are not subject to arbitration-for example, a suit to challenge the validity or application of the arbitration clause or an action to enforce an arbitration award. Rather than covering all "disputes" or all "claims" like the arbitration provision in the Product Development Agreement, the forum selection clause confers "exclusive jurisdiction" on Texas courts only with respect to "any suit or proceeding." This limitation suggests that the parties intended the clause to apply only in the event of a non-arbitrable dispute that must be litigated in court.

Id. at 395-96.

Giant Eagle argues that under Personal Security, this court should consider the meaning of "action" in the forum selection clause in the shareholders agreement when deciding the meaning of "any action arising" in the forum selection clause in the stock purchase agreement. In other words, Giant Eagle argues that because "any action brought" means the initiation of a lawsuit, and the forum selection clause in the shareholders agreement uses the phrase "any action brought," the phrase "any action arising" used in the forum selection clause in the stock purchase agreements also means the

initiation of a lawsuit. Personal Security, however, is distinguishable from this case. The court in Personal Security held:

> [I]n the absence of a contrary expression of intent in the Stock Purchase Agreement, the arbitration provision in the Product Development Agreement covers all disputes related to the subject matter of the entire transaction between PSSI and Motorola. Because we cannot say "with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," we find that it applies to PSSI's claims under the Stock Purchase Agreement.

Personal Sec., 297 F.3d at 394-95.

Here, an arbitration agreement is not in issue; the court, therefore, does not need to consider the "'liberal policy favoring arbitration'" and a "'strong federal policy in favor of enforcing arbitration agreements.'" Id. at 392 (quoting Texaco Exploration and Prod. Co. v. AmClyde Engineered Prods. Co., Inc., 243 F.3d 906, 909 (5th Cir. 2001)). Secondly, because the parties chose to use different phrases in the forum selection clauses in their agreements, i.e., "any action arising" and "any action brought," they have shown a "contrary expression of intent" that those phrases do not mean the same thing. As Giant Eagle argues, "any action brought" means the initiation of a lawsuit, and, as the court previously held, "any action arising" includes the filing of a counterclaim. The shareholders agreement in this case shows that the parties knew how to limit the application of a forum selection clause to the initiation of a lawsuit by using the phrase "any action brought." The parties chose not to use that language with respect to the stock purchase agreements. This situation is unlike in Personal Security where the allegedly "contrary" provision was not an anti-arbitration provision; it was a forum selection clause. Here, there are two forum selection clauses that do not provide for the same outcome. Plaintiff's argument urges the court to ignore the actual terms used by the parties. This argument runs contrary to principles of contract interpretation to "give meaning to each of the agreement's terms." Dallas Gas Partners, L.P. v. Prospect Energy Corp., 733 F.3d 148, 157 (5th Cir. 2013) (citing Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs., 472 N.E.2d

315 (N.Y. 1984) ("In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless.)). Based upon the foregoing, Personal Security is distinguishable from this case, and not a ground to deny Excentus' motion to sever and transfer.

Giant Eagle's third argument is that under Texas law, the word "action" means the entirety of a civil proceeding, and, under those circumstances, "any action arising" means the same as "any action brought." (ECF No. 161 at 7.) The decisions cited by Giant Eagle in support of this argument, however, interpreted the word "action" in statutes. See TLI, Inc. v. United States, 100 F.3d 424, 427 (5th Cir. 1996) (interpreting 11 U.S.C. § 108); Nolan v. Boeing Co., 919 F.2d 11058, 1066 (5th Cir. 1990) (interpreting 28 U.S.C. § 1441); Thomas v. Oldham, 895 S.W.2d 352, 356 (Tex. 1995) (interpreting Tex. Civ. Prac. & Remedies Code Ann. § 101.106). As the court noted in Wells Fargo Bank, N.A. v. David Orlando Collins, Civ. Action 09-2483, 2010 WL 3303663, at *2 (S.D. Tex. Aug. 19, 2010), "[s]tatutory interpretation is a much different undertaking than contract interpretation, especially when the contract conveys rights and privileges negotiated between the parties." The court explained:

> The basic rules of contract interpretation require the court "to ascertain the true intentions of the parties as expressed in the instrument." Ace Cash Express, Inc. v. Silverman, No. 03–03–00205–CV, 2004 WL 101684, at *3 (Tex.App.-Austin Jan.23, 2004) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983)). The primary goal in interpreting a contract is to give effect to the meaning of the contract as drafted, not as the parties intended it to be drafted. Id. at *3 (citing First State Bank v. Keilman, 851 S.W.2d 914, 922 (Tex.App.-Austin 1993, writ denied)). "Where the language of a [contract] is unambiguous, and its meaning is clear, the [contract] must be given effect according to its terms." Bd. of Ins. Comm'rs, 180 S.W.2d at 909. Normally, the language of the contract will be given its "plain grammatical meaning," unless doing so would result in a departure from the obvious intentions of the parties, ambiguity in its meaning, or an absurdity. Ace Cash Express, 2004 WL 101684, at *3–4 (citing Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex.1985)).

Wells Fargo, 2010 WL 3303663, at *2. These rules contemplate the court ascertaining the "common meaning" of the words used in a contract by the parties. Id. The parties did not point to any decisions from the Texas courts or federal courts within the Fifth Circuit addressing the common meaning of

the word "action." Under those circumstances, the court finds the analysis of the common meaning of the word "action" by Third Circuit Court of Appeals in <u>Jonathan H</u> persuasive. Although the ultimate issue decided in that case was a matter of statutory interpretation, the court addressed the common meaning of the word "action" prior to its statutory analysis. The Third Circuit Court of Appeals recognized that the word "action" is broad enough to encompass a counterclaim.

The Fifth Circuit Court of Appeals has recognized that "[o]ne of the fundamental tenets of contract interpretation is that contracts should be read as a whole, viewing particular language in the context in which it appears." <u>Woolley v. Clifford Chance Rogers & Wells, L.L.P.</u>, 51 F. App'x 930, *1 (5th Cir. 2002) (citing RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981)). In accord with that principle, the meaning of "action" in this case may be ascertained by considering the context in which that word is used in the agreements in issue. In the forum selection clause in the shareholders agreement, the pertinent phrase is "any action brought;" in the forum selection clause in the stock purchase agreements, the pertinent phrase is "any action arising." The dictionary definitions of the words "brought" and "arising" provide context that supports the court's distinction between the two forum selection clauses in this case. The forum selection clause in the shareholders agreement provides:

> **VENUE FOR <u>ANY ACTION BROUGHT</u> HEREUNDER SHALL BE PROPER EXCLUSIVELY IN THE COUNTY IN WHICH THE RESPONDENT'S PRINCIPAL OFFICES ARE LOCATED.**

(ECF No. 162 at 15) (emphasis added.) The forum selection clause in the stock purchase agreements provides:

> **VENUE FOR <u>ANY ACTION ARISING</u> OUT OF THIS AGREEMENT SHALL RESIDE EXCLUSIVELY IN THE COUNTY IN WHICH THE RESPONDENT'S PRINCIPAL OFFICES ARE LOCATED.**

(ECF No. 28 at 51) (emphasis added.) The word "brought" is the past tense of "bring." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/brought (last visited on

13

March 7, 2014). The pertinent definition of "bring" is "to cause to exist or occur: as…INSTITUTE <*bring* legal action>." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/bring (last visited on March 7, 2014). This definition comports with the Third Circuit Court of Appeals' statutory interpretation of "any action brought" in <u>Jonathan H</u>, which was adopted by federal courts in Texas. <u>Jonathan H</u>, 562 F.3d at 529; <u>see</u> <u>e.g.</u>, <u>Ruben A. v. El Paso Indep. Sch. Dist.</u>, 414 F. App'x 704, 706-07 (5th Cir. 2011); <u>UNC Lear Servs., Inc. v. Kingdrom of Saudi Arabia</u>, 720 F.Supp.2d 800, 804 (W.D. Tex. 2010). In <u>Jonathan H</u>, the court determined that "an action is "brought" when a plaintiff files a complaint, which is the first step that invokes the judicial process." <u>Jonathan H</u>, 562 F.3d at 529. The common meaning of the word "brought" supports this interpretation; indeed, the parties do not dispute the meaning of "any action brought" in this case.

The pertinent definitions of the word "arising" are: (1) "to originate from a source;" and (2) "to come into being or to attention." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/arising (last visited on March 7, 2014). Having concluded that the common meaning of the word "action" is broad enough to include counterclaims, the court holds that "any action arising" can mean *any counterclaim originating from the stock purchase agreements*. Giant Eagle's asserted legal rights in counterclaims VI, VII, VIII, IX, X, and XII originate from the stock purchase agreement. The distinction between "any action arising" and "any action brought" is supported by the dictionary definitions of "action" and "brought."

Under those circumstances, and in light of the foregoing discussion, the court is not persuaded by Giant Eagle's arguments with respect to the application of the forum selection clause in this case. The counterclaims asserted by Giant Eagle arising from the stock purchase agreements, i.e., counterclaims VI, VII, VIII, IX, X, and XII, are subject to the forum selection clause in the stock purchase agreements.

### B. Severance under Federal Rule of Civil Procedure 21

The court agrees with Giant Eagle that 28 U.S.C. § 1404(a) contemplates the transfer of an entire civil proceeding and not individual claims. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1518-19 (10th Cir. 1991) ("Section 1404(a) only authorizes the transfer of an entire action, not individual claims."); Wyndham Assocs. V. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968). The court may, however, sever transferable claims under Federal Rule of Civil Procedure 21, which would result in two separation actions, and then transfer the severed action to the appropriate court. Wyndham, 398 F.2d at 618 ("Where certain claims are properly severed, the result is that there are then two or more separate 'actions,' and the district court may, pursuant to § 1404(a), transfer certain of such separate actions while retaining jurisdiction of others.")

In In re Nintendo Co., Ltd., Misc. No. 151, 2013 WL 5345899 (Fed. Cir. Sept. 25, 2013), the court noted:

> Rule 21 provides that, "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The decision to deny a motion to sever is committed to the discretion of the district court. In re EMC Corp., 677 F.3d 1351, 1355 (Fed.Cir.2012). This discretion is not unbridled, however; it "must be exercised within the boundaries set by relevant statutes and precedent," and a "district court abuses its discretion if it relies on an erroneous conclusion of law." Id. This court generally applies Federal Circuit law, rather than regional circuit law, to the issue of severance. Id. at 1354. We may, however, look to the decisions of our sister circuits for guidance. See id.

In re Nintendo Co., Ltd., Misc. No. 151, 2013 WL 5345899, at *6 (Fed. Cir. Sept. 25, 2013). "A district court has broad discretion to order the severance of particular claims and afford them separate treatment when doing so advances the administration of justice and no party suffers prejudice by virtue of the severance." El Aguila Food Prods., Inc. v. Gruma Corp., 167 F.Supp.2d 955, 959-60 (S.D. Tex. 2001).

In accordance with the foregoing statement of the law, it is appropriate for a court to sever claims subject to a valid forum selection clause. 1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish

Results, LLC, Civ. Action No. 13-961, 2014 WL 279669, at *10 (W.D. Tex. Jan. 23, 2014) ("The Court, through the above analysis, has determined the two forum selection clauses are both valid and should be enforced. Therefore, severance is appropriate."). This conclusion is true even where a party opposing the severance argues—like Giant Eagle does in this case—that "severance would be a waste of judicial resources, and severance would severely prejudice [them]." Id. The court will not "override" the parties' agreement with respect to where certain claims should be tried. Id. ("Notwithstanding the fact these claims are interrelated and separating them forces two different courts to handle similar cases, this Court cannot override the parties' contractual agreements."). As the court noted in 1-Stop, "any inconvenience or prejudice imposed on [the party opposing severance], or any other private interest factor, is not be considered in the § 1404(a) analysis given Atlantic Marine[;]" indeed, as the court noted, a party opposing severance "could have avoided this entire dilemma if it had read and understood the contracts it signed." Id.

Based upon the foregoing, severance of counterclaims arising under the stock purchase agreements, i.e., counterclaims VI, VII, VIII, IX, X, and XII, will be severed from Excentus' claims and Giant Eagle's other counterclaims that do not arise under the stock purchase agreements.

**III.    Conclusion**

For the reasons stated herein, the motion to sever and transfer (ECF No. 147) filed by Excentus will be GRANTED. Pursuant to the forum selection clause in the stock purchase agreements, the standalone civil proceeding created by the court severing counterclaims VI, VII, VIII, IX, X, and XII from the other claims asserted in this case will be transferred to the United States District Court of the Northern District of Texas, Dallas Division.

Within fourteen days of the entry of this opinion and accompanying order, Giant Eagle must file counterclaims VI, VII, VIII, IX, X, and XII as claims in a separate case in this district. The Clerk of Court will be directed not to charge a filing fee for that case. After the case is filed, this court will

enter an order to transfer those counterclaims to the District Court of the Northern District of Texas, Dallas Division. This court will coordinate with the transferee court to minimize duplicative discovery, if any, and to facilitate a prompt resolution of all claims and counterclaims between Excentus and Giant Eagle in an efficient manner.

The motion to stay (ECF No. 160) with respect to Excentus' motion to sever and transfer will be DENIED as moot.

An appropriate order will be entered.

By the court,

DATED: March 10, 2014

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Court