IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EXCENTUS CORPORATION**, | ) | CIVIL ACTION NO.  13-178 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GIANT EAGLE, INC., DAVID** | ) | |
| **SHAPIRA, DANIEL SHAPIRA,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

CONTI, Chief District Judge

### I.  Introduction

Pending before the court is a motion to dismiss (ECF No. 91) filed by defendants David

Shapira and Daniel Shapira (together, the "Shapira defendants"). On February 1, 2013, plaintiff

Excentus Corporation ("Excentus" or "plaintiff") filed a complaint against defendant Giant

Eagle, Inc. ("Giant Eagle") and the Shapira defendants. In the complaint, Excentus:

- alleges the Shapira defendants, who sit as members of Excentus' board of
  directors, violated the duty of loyalty and utmost good faith;

- seeks a declaratory judgment that the Software License and General
  Services Agreement and Addendum (the "Agreement") executed in
  February 2010 between Excentus and Giant Eagle does not provide Giant
  Eagle a license to three of Excentus' patents;

- alleges Giant Eagle infringed three of Excentus' patents; and

- alleges Giant Eagle engaged in unfair competition.

(ECF No. 1.)

On May 9, 2013, the Shapira defendants filed a motion to dismiss and a brief in support

of the motion arguing Excentus failed to state a claim for breach of the duty of loyalty and

utmost good faith. (ECF Nos. 20, 21.) On the same day, the Shapira defendants filed counterclaims against Excentus. (ECF No. 22.) The Shapira defendants asserted the following counterclaims against Excentus:

- Counterclaim I – Mandatory Advancement of Defense Costs

- Counterclaim II – Mandatory Indemnification for the Texas Action (which was transferred to this court)

- Counterclaim III – Breach of Forum Selection Clause

- Counterclaim IV – Award of Attorney's Fees Under Section 38.001 of the Texas Civil Code

(ECF No. 22.)

On May 31, 2013, Excentus filed a motion to dismiss the Shapira defendants' counterclaims arguing the counterclaims were procedurally improper because the Shapira defendants did not file them along with an answer to the complaint. (ECF No. 36 at 1.) On June 11, 2013, the Shapira defendants filed an answer and counterclaims. (ECF No. 41.) At a hearing held on June 18, 2013, the court granted Excentus' motion to dismiss the counterclaims filed on May 9, 2013 without prejudice because the answer and same counterclaims were filed on June 11, 2013.

On June 24, 2013, Excentus filed an answer to the Shapira defendants' counterclaims. (ECF No. 45.) On June 25, 2013, the Shapira defendants filed a motion for judgment on the pleadings with respect to Excentus' claim for breach of the duty of loyalty and utmost good faith. (ECF Nos. 51 and 52.) On July 9, 2013, Excentus filed a response to the Shapira defendants' motion for judgment on the pleadings with respect to the claims for breach of duty of loyalty and utmost good faith and a brief in support of the response. (ECF Nos. 63, 64.)

At a hearing on July 15, 2013, the court granted without prejudice the Shapira defendants' motion for judgment on the pleadings with respect to Excentus' claim for breach of the duty of loyalty and utmost good faith.

On August 7, 2013, Excentus filed a first amended complaint. (ECF No. 84.) On August 29, 2013, the Shapira defendants filed a motion to dismiss Excentus' claim for breach of the duty of loyalty and utmost good faith and a brief in support of the motion. (ECF Nos. 91, 92.) On September 19, 2013, Excentus filed a brief in opposition to the Shapira defendants' motion to dismiss with respect to its claim for breach of duty of loyalty and utmost good faith. (ECF No. 99.) On October 9, 2013, the Shapira defendants with leave of court filed a reply brief in support of their motion to dismiss. (ECF No. 101.)

On November 25, 2013, the court held a hearing with respect to the Shapira defendants' motion to dismiss and other motions filed by the parties. At the conclusion of the hearing, the court continued the hearing until December 12, 2012. At the end of the hearing on December 12, 2012, the court took the matter with respect to the motion to dismiss under advisement.

The Shapira defendants' motion to dismiss the breach of the duty of loyalty and utmost good faith claim having been fully briefed and argued before the court is now ripe to be decided by the court.

## II. Factual Allegations in the Amended Complaint Accepted as True Solely for the Purpose of Resolving the Motion to Dismiss[1]

Between 1998 and 2011, Excentus became a leader in providing fuel site automation and integration to grocery point of sale systems and in using that technology to develop fuel cross-marketing programs. (ECF No. 84 ¶ 8.)

---

[1] Other factual allegations will be addressed in the discussion relevant to a particular argument.

Giant Eagle is a privately-held, family-owned company that, among other things, owns and operates a chain of grocery and convenience stores. (Id. ¶ 10.) Many Giant Eagle locations sell gasoline and other fuel products at a fuel station located in the parking lot of the grocery store. (Id.) Giant Eagle offers fuel discounts to its customers based upon their in-store purchases as part of a fuel cross-marketing program to increase sales and profits. (Id.)

In 2001, Giant Eagle contacted Excentus to discuss Excentus "providing Giant Eagle with systems and services in support of Giant Eagle's efforts to design and test a fuel cross-marketing program using fuel discounts as consumer loyalty awards to increase sales and profits." (ECF No. 84 ¶ 14.) According to Excentus, David Shapira "was so pleased that Excentus was able to provide its systems and services in support of Giant Eagle's fuelperks! program and impressed with Excentus' vision for the Excentus Coalition that he caused Giant Eagle to invest in Excentus twice (in 2004 and 2005), and Giant Eagle became one of the largest Excentus shareholders." (Id. ¶ 15.) As a result of Giant Eagle's investment in Excentus, Giant Eagle obtained seats on the Excentus Board, and the Shapira defendants joined the Excentus board of directors. (Id. ¶ 16.)

David Shapira is a director of Excentus and Giant Eagle. (Id. ¶ 11.) David Shapira served as the chief executive officer and president of Giant Eagle for thirty-one years. (Id.) In January 2012, David Shapira passed the title of chief executive officer of Giant Eagle to his daughter, but retained the title of chairman of the board of directors of Giant Eagle, which he has held since 1992. (Id.) According to Excentus:

- "As the only CEO, President, and Chairman of the Board that most Giant Eagle employees have ever known, David Shapira exerted extraordinary influence within Giant Eagle." (ECF No. 84 ¶ 11.)

- "David Shapira, individually and through trusts or entities he created or controls, owns stock in Giant Eagle." (Id.)

- "[T]he Giant Eagle Board of Directors and Bylaws delegated to David Shapira as Chief Executive Officer authority to operate the company, to negotiate contracts on behalf of Giant Eagle, and to decide whether it would be in Giant Eagle's interest not to enter into a contract with another entity." (Id.)

- "[B]ased on the statements made to Excentus by the Shapiras and other officers of Giant Eagle, David Shapira effectively ran Giant Eagle and controlled all major decisions at Giant Eagle (including any decision to contract, or not contract, with Excentus) at all relevant times through at least January 2012." (Id.)

- "Any decision made or view held by David Shapira was and is implemented by the other officers of Giant Eagle—because they viewed David Shapira's decisions and views as the company's decisions and views. As such, David Shapira exercised a controlling influence over the management and directors of Giant Eagle by virtue of his management control and his position as CEO and President since 1980 and Chairman of the Board since 1992." (Id.)

- "Whenever David Shapira desired Giant Eagle to do something with respect to Excentus, he caused Giant Eagle to do it; conversely, whenever he did not desire Giant Eagle to do something with respect to Excentus, it did not occur." (Id.)

Excentus in the amended complaint offers eleven examples of David Shapira exerting his influence over Giant Eagle:

1. "In 2002, David Shapira approved, on behalf of Giant Eagle, the initial Software License and General Services Agreement with Excentus. That agreement included the opportunity for Giant Eagle to invest approximately $1 million in Excentus based on the amount paid to Excentus under such Agreement." (ECF No. 84 ¶ 11.)

2. "Based on statements made by David Shapira and Giant Eagle officers… (a) David Shapira wanted the "fuelperks!" program pursued by Giant Eagle to be part of his legacy; and (b) David Shapira caused Giant Eagle to implement its fuelperks! program…even though others within Giant Eagle, including some who were involved with Giant Eagle's executive management and board, disagreed with him on this business plan due to the significant potential risks and costs to Giant Eagle." (Id.)

3. "Following a presentation to David Shapira by Excentus' founder & CEO as to its plans for the Excentus Coalition…David Shapira stated that he wanted Giant Eagle's initial investment in Excentus to be $3 million instead of the $1 million previously discussed. David Shapira then caused Giant Eagle to invest $3 million in the Series A Preferred Stock in Excentus by instructing an officer of Giant Eagle, John Lucot, to get it done." (Id.)

4.     "In connection with discussing the agreement related to that investment, and in multiple conversations thereafter, David Shapira discussed with Excentus' CEO that, although his family was only one of several that owned Giant Eagle, he (David Shapira) had management control over Giant Eagle." (<u>Id.</u>)

5.     "In 2005, when Excentus decided to raise additional capital to pursue its Coalition plan, David Shapira requested that Giant Eagle be allowed to make that investment. He then caused Giant Eagle officer John Lucot to complete the transaction under which Giant Eagle invested an additional $4 million in the Series B Preferred Stock in Excentus. At that time, David Shapira also decided, on behalf of Giant Eagle, that Giant Eagle's representative on the Excentus Board (other than himself) would be Daniel Shapira." (<u>Id.</u>)

6.     "When Excentus discussed its plans and parameters being developed for the Excentus Coalition…beginning after the 2005 investment and multiple times thereafter, David Shapira and several other Giant Eagle officers…stated that David Shapira took issue with numerous aspects of such plans and parameters because they differed from the way David Shapira had established Giant Eagle's fuelperks! program, which included the following parameters: (a) 10¢/gallon discount for every $50 spent inside Giant Eagle stores, and (b) 30 gallons maximum for any discounts on fuel." (ECF No. 84 ¶ 11.)

7.     "During Excentus' ongoing efforts to get Giant Eagle to participate in the Excentus Coalition…plans as committed by David Shapira on behalf of Giant Eagle, on multiple occasions Giant Eagle's officers…stated that they could not enter into an agreement for Giant Eagle to participate in the Excentus Coalition plans until they first convinced David Shapira that it was something Giant Eagle should do." (<u>Id.</u>)

8.     "Based on statements made by David Shapira, Daniel Shapira and Giant Eagle officers…the decision that Giant Eagle would not participate in the Excentus Coalition plans…, and not to enter into an agreement to do so, was made by David Shapira." (<u>Id.</u>)

9.     "As part of his decision to invest in Excentus, David Shapira committed that Giant Eagle would license its "fuelperks!" brand to Excentus, and he later reached an agreement with Excentus in principle as to the basic terms of the license. Then David Shapira instructed other officers of Giant Eagle to work out the operating details and terms of a license agreement which was approved and executed in 2008 by David Shapira on behalf of Phoenix Intangibles (an affiliate of Giant Eagle)." (<u>Id.</u>)

10.     "After Excentus acquired the Excentus Patents in 2008, Excentus discussed the need for Giant Eagle to license its patents. David and Daniel Shapira stated that Giant Eagle did not need a license. As a result, David and Daniel Shapira caused

Giant Eagle not to negotiate a license for the Excentus Patents (including the patents at issue in this case)." (Id.)

11.    "After Excentus entered into a contract with Shell Oil in February of 2011 to participate in Excentus' Coalition plans, David Shapira stated on a telephone call with the CEO of Excentus that Giant Eagle would never participate in Excentus' Coalition plans as long as Shell is allowed to participate in Giant Eagle's markets. He also stated that he [i.e., Giant Eagle] previously had been willing to 'pay something" to license the Excentus Patents, "but now we [i.e., Giant Eagle] are never going to pay you a G** D*** penny.'" (Id.)

Daniel Shapira is a director of Excentus, and the primary outside counsel for Giant Eagle. (Id. ¶ 12.) Daniel Shapira served as an attorney for Excentus with respect to, among other legal matters, enforcing Excentus patents against other retailers. (Id.) Daniel Shapira, "individually and through trusts or entities he created or controls, owns stock in Giant Eagle." (Id.) Daniel Shapira regularly attended Giant Eagle's weekly senior management meetings through January 2012. (Id.) In weekly senior management meetings, Daniel Shapira offered his advice on business and legal matters. (Id.) Daniel Shapira described his role with Giant Eagle as "a person who made decisions on behalf of Giant Eagle, and was a key advisor and influencer of his brother David Shapira as CEO of the company." (Id.) "Daniel Shapira stated on numerous occasions that he and David Shapira could 'make it happen'—i.e., the two of them could cause Giant Eagle to take action as they desired, and he never mentioned that any of their decisions or plans involving Excentus had to be approved by the Giant Eagle Board, other Giant Eagle officers, or other Giant Eagle shareholders." (Id.)

Excentus in the complaint offers four examples of Daniel Shapira's influence over Giant Eagle:

1.    After Daniel Shapira joined the Excentus Board, he stated that "(i) he and David Shapira had management control over Giant Eagle; (ii) [he] advised and assisted David Shapira (on legal and business issues) in his decisions as Giant Eagle's CEO; and (iii) David Shapira sometimes would take his decisions to the Giant Eagle board of directors which was more of a "rubber stamp." (ECF No. 84 ¶ 12.)

2. "After Excentus acquired the Excentus Patents in 2008, Excentus discussed the need for Giant Eagle to license its patents. David and Daniel Shapira stated that Giant Eagle did not need a license. As a result, David and Daniel Shapira caused Giant Eagle not to negotiate a license for the Excentus Patents (including the patents at issue in this case)." (Id.)

3. "Daniel Shapira reviewed and approved contracts Giant Eagle entered with Excentus, from both a legal standpoint as well as a business standpoint to which Giant Eagle would agree." (Id.)

4. "Daniel Shapira advised his brother David Shapira (on business as well as legal issues) in connection with: (i) the contracts with Excentus…, (ii) Giant Eagle not participating in or entering into any agreement related to the Excentus Coalition…; and (iii) not obtaining a license to the Excentus Patents for Giant Eagle's fuelperks! program." (Id.)

One of Excentus' business priorities was to develop the "Excentus Coalition," "which is a nationwide marketing coalition of grocery chains, numerous retailers and other participants who use fuel discounts under common attributes and shared marketing to increase all participants' sales and profits." (ECF No. 84 ¶ 30.) As a part of Excentus' plan to develop the coalition, it requested that Giant Eagle

(1) share with Excentus important information about Giant Eagle's "fuelperks!" program relating to its attributes, performance, and key learnings, including but not limited to information relating to gift cards sales and the testing of payment cards introduced in conjunction with another Excentus shareholder, (2) become a first mover in the Excentus Coalition, and (3) instruct Giant Eagle personnel to participate in Excentus' share group meetings that included other Excentus grocer customers.

(ECF No. 84 ¶ 30.) According to Excentus, the Shapira defendants directed Giant Eagle not to share the foregoing information with Excentus and to limit Giant Eagle's participation in the Excentus Coalition, "despite David Shapira's (on behalf of Giant Eagle) prior promises and representations that Giant Eagle would [share the information and participate in the Excentus Coalition]." (Id.) The Shapira defendants also attempted "to convince Excentus to abandon the Excentus Coalition strategy, and they directed and caused Giant Eagle not to join the Excentus

Coalition." (Id. ¶ 32.) The Shapira defendants "went so far as to threaten that Giant Eagle, along with others, would form its own coalition to compete with the Excentus Coalition." (Id.) "[T]he Shapiras also objected to Excentus' use of the Fuel Rewards Network ("FRN") trademark in relation to the Excentus Coalition because it would likely negatively impact the license royalties paid under the trademark license agreement as well as Giant Eagle's success and benefit from its fuelperks! program." (Id. ¶ 33.)

According to Excentus, the Shapira defendants caused Giant Eagle to refrain from participation in the Excentus Coalition. (ECF No. 84 ¶ 34.) Giant Eagle not participating the Excentus Coalition "delayed and hampered the development of the Excentus Coalition by several years and thereby caused Excentus to lose the profits from the Excentus Coalition during that period and going forward, including but not limited to profits resulting from Giant Eagle's participation in the Excentus Coalition." (Id.)

According to Excentus:

The Shapiras personally profited and benefitted—by any payments they received related to Giant Eagle's profits, any dividends from Giant Eagle, any increase in the value of their stock in Giant Eagle, the legal fees paid to Daniel Shapira or his law firm, and any other consideration they received—by effectively usurping the Excentus corporate business opportunity to derive income from a patent license with Giant Eagle by destroying that license opportunity (i.e., directing Giant Eagle not to enter into a patent license – a matter of Excentus corporate interest).

(ECF No. 84 ¶ 40.)

Based upon the foregoing allegations, Excentus alleges "[t]he Shapiras have breached their duties of loyalty and utmost good faith in their dealings with Excentus, as set forth above, and such conduct was opposed to the best interests of Excentus." (ECF No. 84 ¶ 43.) Excentus alleges it lost profits due to: (1) Giant Eagle not participating in the Excentus Coalition; and (2) Giant Eagle not paying a royalty for using Excentus' patents. (Id.)

### III. Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.…Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556) (internal citation omitted).

Two working principles underlie Twombly. Iqbal, 556 U.S. at 678. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Iqbal, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

If a plaintiff "chooses to plead particulars and they show that he has no claim, then he is out of luck-he pleaded himself out of court." Jefferson v. Ambroz, 90 F.3d 1291, 1296 (7th Cir. 1996). Under those circumstances, any attempt to amend the complaint would be futile, and the complaint should be dismissed with prejudice. Morales v. Beard, Civ. Action No. 09-162, 2009 WL 2413425, at *2 (W.D. Pa. July 31, 2009).

### IV. Discussion

> [D]irectors of a corporation stand in a fiduciary relationship to the corporation and its stockholders, and they are without authority to act in a matter in which a director's interest is adverse to that of the corporation. Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148, 152 (1953). Further, the duty of loyalty dictates that a corporate officer or director must act in good faith and must not allow his or her personal interest to prevail over the interest of the corporation. Landon v. S & H Mktg. Group, 82 S.W.3d 666, 672 (Tex.App.-Eastland 2002, no pet.). The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on

the part of the officer or director. <u>Int'l Bankers Life Ins. Co. v. Holloway</u>, 368 S.W.2d 567, 577 (Tex.1963); <u>Landon</u>, 82 S.W.3d at 672.

<u>Pinnacle Data Servs., Inc. v. Gillen</u>, 104 S.W.3d 188, 198-99 (Tex. App. 2003). The elements of a claim for breach of fiduciary duty are "existence of a fiduciary duty, breach of the duty, causation, and damages." <u>Abetter Trucking Co. v. Arizpe</u>, 113 S.W.3d 503, 507 (Tex. App. 2003).

> [A] director of one business corporation may sit on the board of a competing business corporation. Furthermore, subject to a "jealous" review for fairness by the courts, such an interlocking director may even vote on transactions between those corporations without violating any fiduciary duty to either. <u>Geddes v. Anaconda Copper Mining Company</u>, 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425 (1920); <u>Crook v. Williams Drug Co., Inc.</u>, 558 S.W.2d 500 (Tex.Civ.App. Tyler 1977, writ ref'd n. r. e.); <u>Reynolds-Southwestern Corporation v. Dresser Industries, Inc.</u>, 438 S.W.2d 135 (Tex.Civ.App. Houston (14th Dist.) 1969, writ ref'd n. r. e.); Hamilton, Business Organizations s 715 (1973).

<u>State Banking Bd. v. Valley Nat'l Bank</u>, 604 S.W.2d 415, 417 (Tex. App. 1980). Where the *fairness* of a transaction between boards of corporations with common directors is challenged and not otherwise valid under TEX. BUS. ORGS. CODE § 21.418,[2] "the burden is upon those who

---

[2] Under TEX. BUS. ORGS. CODE § 21.418, a contract between corporations with common directors "is valid and enforceable, and is not void or voidable, notwithstanding any relationship…, if any one of the following conditions is satisfied:"

> (1) the material facts as to the relationship or interest described by Subsection (a) and as to the contract or transaction are disclosed to or known by:

>> (A) the corporation's board of directors or a committee of the board of directors, and the board of directors or committee in good faith authorizes the contract or transaction by the approval of the majority of the disinterested directors or committee members, regardless of whether the disinterested directors or committee members constitute a quorum; or

>> (B) the shareholders entitled to vote on the authorization of the contract or transaction, and the contract or transaction is specifically approved in good faith by a vote of the shareholders; or

would maintain [the transaction] to show [its] entire fairness." Crook v. Williams Drug Co., Inc., 558 S.W.2d 500, 506 (Tex. App. 1977); accord C.H. Leavell & Co. v. Leavell Co., 676 S.W.2d 693, 698 (Tex. App. 1984).

> Fairness is generally thought to have two prongs. First, the decision-making process must be fair. The most common examples of unfair processes involve the failure to make full disclosure or the exertion of pressure on the board of directors to approve a particular transaction….Second, the transaction at issue must be fair to the corporation as a substantive business matter.

ELIZABETH S. MILLER & ROBERT A. RAGAZZO, 20A TEXAS PRACTICE SERIES: BUSINESS ORGANIZATIONS § 36:7 (WEST 3D ED. 2011) (footnotes omitted).

In the first amended complaint, Excentus claims the Shapira defendants breached their duties of good faith and loyalty by causing: (1) the delayed roll out of and Giant Eagle's participation in the Excentus Coalition; and (2) Giant Eagle not to pay a reasonable royalty for use of Excentus' patents.[3] (ECF No. 84 ¶ 43.) These allegations present a novel question of law.[4] The statutory and case law addresses breach of fiduciary duty claims asserted against director-defendants serving as common directors for two corporations engaged in a *transaction*. The Texas Business Organization Code contemplates the same situation. TEX. BUS. ORGS. CODE §

---

> (2) the contract or transaction is fair to the corporation when the contract or transaction is authorized, approved, or ratified by the board of directors, a committee of the board of directors, or the shareholders.

TEX. BUS. ORGS. CODE § 21.418.

[3] Excentus also alleges the Shapira defendants attempted to interfere with Excentus' coalition strategy by objecting to the use of the Fuel Rewards Network. (ECF No. 84 ¶ 33.) It is unclear whether Excentus' claim for breach of the duty of loyalty and good faith is based upon these allegations. To the extent that it is, the claim should be dismissed. As this court held at the July 15, 2013 hearing, a director cannot be held liable for "attempting" to breach the duty of good faith and loyalty because the causation element would not be satisfied. (H.T. 7/15/13 (ECF No.77) at 10.)

[4] No decision or statute addressing a common director's "failure to cause a transaction" theory was cited by any party and the court's research likewise revealed no such decision or statute.

21.418. Where the director-defendant is alleged to have engaged in self-dealing by standing on both sides of a transaction, the transaction is void or voidable under Texas law unless the requirements of section 21.418 are met or the proponent of the transaction can show the "entire fairness" of the transaction, i.e., the decision-making process was fair and the transaction was fair as a substantive business matter to the corporation challenging the transaction. Section 21.418 and the case law in Texas do not directly address the situation presented by the factual allegations in this case, i.e., allegations that a director who serves as a common director on two boards of directors and a director who served as counsel for another corporation, breached their fiduciary duties by failing to cause one of the corporations to act to its *detriment* in order to *benefit* the other suing corporation.

As described above, when analyzing whether a transaction between corporations with common directors is fair, courts consider the fairness of the decision-making process used by the common directors and the fairness of the transaction to determine whether a director standing on both sides of a transaction breached his fiduciary duty to one of the corporations.[5] These considerations are not directly applicable to this case. Here, Excentus alleges the Shapira defendants acted for the benefit of Giant Eagle by not causing Giant Eagle to engage in a transaction, which would have benefited Excentus. If Excentus' position is correct, then a common director of two corporations can be liable for a breach of fiduciary duty to one of those

---

[5] According to Excentus, David Shapira was a director of Giant Eagle and Excentus, and Daniel Shapira was outside counsel for Giant Eagle and a director of Excentus. Excentus argues David Shapira breached his fiduciary duty to Excentus by causing Giant Eagle not to join the Excentus Coalition. Excentus argues Daniel Shapira breached his fiduciary duty to Excentus by aiding and abetting David Shapira in causing Giant Eagle not to join the Excentus Coalition or pay Excentus royalties for use of the Excentus patents. Because Excentus' theory of recovery against Daniel Shapira is based upon him aiding and abetting David Shapira in breaching his fiduciary duty to Excentus, if David Shapira is not liable for breaching his fiduciary duty to Excentus, *ipso facto* Daniel Shapira will not be liable for breaching his fiduciary duty to Excentus.

corporations if that director does not breach his fiduciary duty to the other corporation, i.e., to cause harm to the other corporation in order to benefit the corporation bringing the lawsuit.

Excentus' allegations are not based upon a transaction with Giant Eagle in which the Shapira defendants caused Excentus to enter into a transaction that harmed Excentus and benefitted Giant Eagle; instead, Excentus' is suing the Shapira defendants for not causing Giant Eagle to act to benefit Excentus, i.e., for *not transacting* with Excentus. If the court only considers whether the Shapira defendants' actions were fair to Excentus, the analysis would be incomplete because the Shapira defendants owed duties of loyalty to Excentus *and* Giant Eagle. Under Excentus' theory of this case, i.e., the Shapira defendants breached their fiduciary duties because they chose Giant Eagle's interests over Excentus' interests, the Shapira defendants— because of their fiduciary duty to Excentus—would be required to cause Giant Eagle to take action to benefit Excentus, even if that action harmed Giant Eagle. This theory of recovery is untenable under corporate law principles. If permitted, it would render common directorships, which are permitted by law, impractical, and common directors would find themselves on the horns of a dilemma,[6] i.e, having to choose which corporation will be the subject of his or her breach of fiduciary duty. If the Shapira defendants acted in a manner which benefitted Excentus, but harmed Giant Eagle, as Excentus wishes, the Shapira defendants may be liable to Giant Eagle for breaching their fiduciary duties to that corporation, which could cause the transaction in issue to be voidable under applicable corporate law. See e.g., Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567 (Tex. 1963) (recognizing that self-dealing transactions are voidable for unfairness); In re Walt Disney Co., Civ. Action No. 15452, 2004 WL 2050138, at *7 (Del.

---

[6] When a person finds himself or herself "on the horns of a dilemma," he or she is being made to choose between two equally undesirable alternatives. See e.g., Grant Thorton LLP v. Prospect High Income Fund, 314 S.W.3d 913, 925 (Tex. 2010); Simon v. State, 374 S.W.3d 550, 553 (Tex. App. 2012); Ray v. State, 106 S.W.3d 299, 303 (Tex. App. 2003).

Ch. Sept. 10, 2004) ("Absent a demonstration that the transaction was fair to [the company], that transaction may be voidable at the discretion of the company."); 3 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATION § 917 (2012) ("Early cases held that the transactions or contracts wherein a director or other corporate officer was interested adversely to the corporation were voidable at the option of the corporation,…regardless of their fairness, and were subject to rescission at the suit of any shareholder….However, this mechanical rule providing that any transaction involving corporate property in which a director or officer has an interest is voidable has been abolished in many jurisdictions where the director or officer can show that the transaction has been fair to the corporation.") (footnotes omitted); ELIZABETH S. MILLER & ROBERT A. RAGAZZO, 20A TEXAS PRACTICE SERIES: BUSINESS ORGANIZATIONS § 36:7 (WEST 3D ED. 2011) ("If a self-dealing transaction is not validated by one of the procedural methods discussed [in section 21.418,], the transaction is voidable by the corporation unless a court can be persuaded of the 'entire fairness' of the transaction."). It would be illogical to impose a duty on the Shapira defendants that could cause the very transaction desired by Excentus to be voidable at the discretion of Giant Eagle. Under those circumstances, Excentus could still be harmed by the transaction because it could be voidable at the discretion of Giant Eagle.

Accordingly, where a common director is being sued for not causing one corporation for which he or she is a director to act to the benefit of the suing corporation for which he or she also is a director, the court cannot consider the director's position on the suing corporation's board of directors in isolation; instead, the court must consider the fairness of the proposed transaction in light of the fiduciary duties owed to *both* corporations; whether the proposed transaction is beneficial to both corporations. See Crook v. Williams Drug Co., Inc., 558 S.W.2d 500, 505

(Tex. Civ. App. 1977) (court recognized the soundness of jury instructions providing that common directors acting for two or more of the corporations "must exercise a high degree of good faith and dedicate their uncorrupted business judgment for the benefit of ___all___ of such corporations.") (emphasis added).

Here, in considering whether the Shapira defendants acted in fairness to both Excentus *and* Giant Eagle, the court must consider the fairness of their actions to Giant Eagle as well as Excentus. For example, if the Shapira defendants purposely caused Giant Eagle to fail to act in a way that is harmful to Excentus without any purpose or reasoning to avoid harm to Giant Eagle, they may have breached their fiduciary duties to Excentus. If, however, the factual allegations in the complaint show the Shapira defendants acted with a purpose to not harm Giant Eagle, Excentus failed to state a claim for breach of fiduciary duty because the transaction in question must be fair to both corporations. The courts' task to consider whether a common director breached his or her fiduciary duty by *not causing* one corporation for which he or she is a director to transact with the other corporation for which he or she is a director is context specific and must take into account the unique facts of the case and a common director's duties to both corporations, i.e., to cause transactions between both corporations to occur only if the transaction is fair to both corporations. In light of these principles, the court will consider each of Excentus' bases for recovery to determine whether Excentus set forth a plausible claim for breach of fiduciary duty under Texas law.

### A. The Shapira defendants caused the delayed roll out of the Excentus Coalition and Giant Eagle's failure to participate in the Excentus Coalition.

Excentus alleges the Shapira defendants breached their fiduciary duty to Excentus by causing Giant Eagle not to join the Excentus Coalition, which resulted in damages to Excentus. Because David Shapira was a member of Giant Eagle's and Excentus' boards of directors, and

Daniel Shapira allegedly stood in a similar relationship, the court must consider whether the Shapira defendants' alleged failure to cause Giant Eagle to engage in the proposed transaction with Excentus was fair in light of their fiduciary duties to both corporations. In the amended complaint, Excentus alleges:

- The Giant Eagle board of directors and bylaws delegated to David Shapira the "authority to operate the company, to negotiate contracts on behalf of Giant Eagle, and to decide whether it would be in Giant Eagle's interest not to enter into a contract with another entity." (ECF No. 84 ¶ 11);

- Daniel Shapira advised David Shapira "in connection with…Giant Eagle not participating in or entering into any agreement related to the Excentus Coalition." (Id. ¶ 12(D));

- The Excentus Coalition "is a nationwide marketing coalition of grocery chains, numerous retailers and other participants who use fuel discounts under common attributes and shared marketing to increase all participants' sales and profits," (Id. ¶ 30);

- As part of Giant Eagle's initial investment in Excentus, it agreed to support the "continued development of Excentus' Coalition plans as well as becoming one of the first participants in the Excentus Coalition," (Id. ¶ 17);

- The Shapira defendants made the decision that Giant Eagle would not join the Excentus Coalition because: "(i) the difference in attributes between the Excentus Coalition as compared to how David Shapira had established the Giant Eagle fuelperks! program; (ii) Giant Eagle's success in selling gift cards in its stores in partnership with Blackhawk Network (a subsidiary of Safeway) ("Blackhawk") using the fuelperks! program established by David Shapira; (iii) David Shapira's belief that offering fuel discounts in connection with gift cards eliminated any need for Giant Eagle to join the Excentus Coalition, and (iv) David Shapira's desire not to reduce or put at risk Giant Eagle's sale of gift cards." (Id. ¶ 11(H));

- In February 2011, Shell Oil contracted with Excentus to participate in the Excentus Coalition. David Shapira told the chief executive officer of Excentus that Giant Eagle would not participate in the Excentus Coalition "as long as Shell is allowed to participate in Giant Eagle's markets." (Id. ¶ 11(K));

- Excentus, as part of its plans to develop the Excentus Coalition, requested that the Shapira defendants "cause Giant Eagle to: (1) share with Excentus important information about Giant Eagle's "fuelperks!" program relating to its attributes, performance, and key learnings, including but not limited to information relating to gift cards sales and the testing of payment cards introduced in conjunction with

another Excentus shareholder, (2) become a first mover in the Excentus Coalition, and (3) instruct Giant Eagle personnel to participate in Excentus' share group meetings that included other Excentus grocer customers." (<u>Id.</u> ¶ 30);

- "David and Daniel Shapira decided and directed Giant Eagle personnel not to share with Excentus the information described above that David Shapira had promised to share, and the Shapiras decided and directed Giant Eagle personnel to limit their participation in the development of the Excentus Coalition plans, despite David Shapira's (on behalf of Giant Eagle) prior promises and representations that Giant Eagle would do so." (<u>Id.</u>) and

- The Shapira defendants "attempted (unsuccessfully) to convince Excentus to abandon the Excentus Coalition strategy, and they directed and caused Giant Eagle not to join the Excentus Coalition" because they were concerned "the Excentus Coalition would adversely impact Giant Eagle's gift card sales." (<u>Id.</u> ¶ 32).

Based upon the foregoing allegations, the court recognizes that Excentus in effect plead that the Shapira defendants' decision to not permit Giant Eagle to join the Excentus Coalition was fair in light of their fiduciary duties to both corporations. Excentus, based upon the allegations in the complaint, was aware that David Shapira, who was influenced by Daniel Shapira, sat on the board of directors of Giant Eagle and had decision-making authority and influence for that company, *and* that the Shapira defendants sat on the board of directors of Excentus; indeed, Giant Eagle bargained for seats on the Excentus board of directors when it invested in the company. Excentus' detailed allegations with respect to the Shapira defendants' reasoning for not causing Giant Eagle to join the Excentus Coalition demonstrates the fairness of the Shapira defendants' alleged action to cause Giant Eagle not to join the Excentus Coalition. According to Excentus, the Shapira defendants caused Giant Eagle not to join the Excentus Coalition because: (1) Shell Oil would have been permitted to participate in Giant Eagle's markets as a member of the Excentus Coalition; (2) participation in the Excentus Coalition would reduce or put at risk Giant Eagle's sale of gift cards; (3) Giant Eagle did not have a need to join the Excentus Coalition, and (4) the Excentus Coalition's attributes differed from Giant

Eagle's fuelperks! program. In the complaint, Excentus does not challenge the Shapira defendants' reasoning for not joining the Excentus Coalition; rather, its claims for breach of fiduciary duty against the Shapira defendants are based solely upon the Shapira defendants, regardless of their reasoning, "choosing Giant Eagle's interests instead of Excentus' interests." (ECF No. 99 at 13.)

In light of Excentus' allegations with respect to the Shapira defendants' reasoning for not causing Giant Eagle to join the Excentus Coalition, which the court must accept as true, the court must conclude that Excentus plead that the Shapira defendants' decision was fair in light of the Shapira defendants' fiduciary duties to both corporations. According to the allegations in the complaint, when the Shapira defendants made the decision to cause Giant Eagle not to join the Excentus Coalition, they made the decision based upon protecting the business interests of Giant Eagle, i.e., not to cause harm to Giant Eagle's fuelperks! program. Excentus cannot expect the Shapira defendants to cause Giant Eagle harm in order to benefit the Excentus Coalition. If the law supported the kind of claim articulated by Excentus, and a common director could be liable for not avoiding harm to one corporation for which he or she serves as a director, which harm could have benefited the other corporation for which he or she also is a director, common directorships would not be feasible. Common directors would be exposed to liability for any decision, which was fair to only one of the corporations on whose board of directors he or she served and harmed the other corporation.

If the Shapira defendants caused Giant Eagle not to join the Excentus Coalition out of spite, without reason, or in contravention to Giant Eagle's legal obligations, Excentus may have a claim for relief because the decision for Giant Eagle to not participate in the Excentus Coalition would not be fair to Excentus and would not be fair to Giant Eagle, who arguably, would also

benefit from the transaction. In other words, where both corporations would benefit from a transaction or at least one corporation would not be harmed by the transaction, then the transaction is fair to both; but, if the transaction is harmful to one of the corporations, the transaction cannot be fair to both, which could cause the transaction to be voidable by the corporation that suffered the harm. Based upon the foregoing, Excentus failed to state a plausible claim for breach of fiduciary duty against the Shapira defendants based upon their alleged decision to cause Giant Eagle not to join the Excentus Coalition. See Morales, 2009 WL 2413425, at *2. The Shapira defendants' motion to dismiss will be granted with prejudice with respect to its allegations that the Shapira defendants caused Giant Eagle not to join the Excentus Coalition.

### B. The Shapira defendants caused Giant Eagle not to pay a reasonable royalty for use of Excentus' patents.

Excentus' allegations that the Shapira defendants breached their fiduciary duty to Excentus by not having Giant Eagle pay a reasonable royalty for the use of Excentus' patents is based upon the legal conclusion that Giant Eagle owed Excentus royalties for the use of their patents; indeed, the Shapira defendants cannot be held liable for breaching their fiduciary duties to Excentus by causing Giant Eagle not to pay the royalties to Excentus if Giant Eagle was not legally obligated to pay Excentus royalties. In other words, whether Excentus has a claim for a breach of fiduciary duty against the Shapira defendants for causing Giant Eagle not to pay Excentus royalties depends upon, among other issues, whether Giant Eagle was legally obligated to pay Excentus royalties and whether the Shapira defendants acted in good faith when they allegedly caused Giant Eagle to not pay royalties to Excentus.

Excentus' allegation that Giant Eagle owed it royalties for the use of its patents forms the basis of Excentus' patent claims against Giant Eagle, i.e., counts two (declaratory judgment

claim), three (infringement of United States Patent number 6,321,94), four (infringement of United States Patent number 6,332,128), and five (infringement of United States Patent number 7,383,204) of the first amended complaint. Whether Giant Eagle owed Excentus royalties will not be determined until the foregoing claims are resolved. At that point, the court will be able to determine whether Excentus pled a plausible claim for relief based upon the allegations that the Shapira defendants breached their fiduciary duties to Excentus by causing Giant Eagle not to pay royalties to Excentus for the use of its patents. Until Excentus' patent claims are resolved, however, Excentus' claim for breach of fiduciary duties based upon the Shapira defendants causing Giant Eagle not to pay Excentus royalties is premature. Permitting Excentus discovery on that issue may cause undue delay, expense, and burden on the parties. The court will, therefore, sever the breach of fiduciary duty claim with respect to the patent issues, pursuant to Federal Rule of Civil Procedure 21, and stay the claim pending the resolution of the patent claims. See FED. R. CIV. P. 21; U.S. v. Nat'l R.R. Passenger Corp., Civ. Action No. 86-1094, 2004 WL 1335723, at *6 (E.D. Pa. June 15, 2004) ("Thus, while neither party has asked this Court to sever, Rule 21 permits a court to sever claims *sua sponte*."); Fifth Market, Inc. v. CME Grp., Inc., Civ. Action No. 08-520, 2013 WL 3063461, at *1 (D. Del. June 19, 2013) ("The decision whether to stay a case lies within the discretion of the court.") (citing Cost Bros., Inc. v. Travelers Indent. Co., 760 F.2d 58, 60 (3d Cir. 1985)); Randle v. Wetzel, Civ. Action No. 2014 WL 92505, at *4 (E.D. Pa. Jan. 9, 2014) ("[A] court may issue a stay *sua sponte*.") (citing First Nonprofit Ins. Co. v. Alexander, Civ. Action No. 09-465, 2009 WL 2256473, at *4 (E.D. Pa. 2009)). The motion to dismiss will be denied without prejudice with respect to the allegations that the Shapira defendants caused Giant Eagle not to pay Excentus royalties for the use of its patents.

### V. Conclusion

The motion to dismiss (ECF No. 91) filed by the Shapira defendants will be granted in part and denied in part. The motion to dismiss will be granted with prejudice with respect to Excentus' allegations that the Shapira defendants breached their fiduciary duties by causing Giant Eagle not to join the Excentus Coalition. The motion to dismiss will be denied with respect to Excentus' allegations that the Shapira defendants breached their fiduciary duties by causing Giant Eagle not to pay royalties for the use of Excentus' patents. That claim will be severed from the amended complaint and stayed pending the resolution of the patent claims asserted against Giant Eagle.[7] An appropriate order will be entered.

DATED: March 24, 2014                                   By the court,

                                                        /s/ JOY FLOWERS CONTI
                                                        Joy Flowers Conti
                                                        Chief United States District Judge

---

[7] The Shapira defendants in their brief in support of the motion to dismiss argue the breach of fiduciary duty claims asserted against them should be dismissed because Excentus did not sufficiently plead the element of causation or that the Shapira defendants received any benefit from their purported misconduct, and the Shapira defendants' unsuccessful dissent from a board decision cannot support a breach of loyalty claim. (ECF No. 92.) The court did not address these arguments in light of Excentus' claims for breach of fiduciary duty based upon the patent issues being premature. If Giant Eagle is not successful in defending against the patent claims, the Shapira defendants may raise the arguments asserted in the motion to dismiss (ECF No. 91) in a renewed motion to dismiss.